**Berry** *vs* **Walker** &c.

*Case* 106.              APPEAL FROM THE BATH CIRCUIT.

*Vendor and Vendee. Liens. Usury. Specific Performance.*

*July* 2.          JUDGE SIMPSON delivered the opinion of the Court.

ON the 13th March, 1843, Berry purchased from
he case on the James E. Walker and John M. Walker, a tract of land,
riginal bill.    containing, by estimation, one hundred and eighty
acres, at the price of five thousand dollars. The purchase money was to be paid in good cash notes; two
thousand dollars thereof *"shortly"* after the date of the
contract, in order to release the land from certain liens
that were on it, the residue at the time possession was
to be given, which was on the 20th day of the ensuing
October. The advance payment of two thousand dollars was to bear interest, at the rate of ten per cent.
per annum, from the time it was made, until the time
specified for the delivery of the possession.

Berry held a note on James E. Walker, one of the
vendors, for seven hundred and fifty-three dollars, which
had been due for some years. By the terms of the contract between the parties, this debt was to be taken in
part payment for the land purchased, interest on it to
be calculated at the rate of twelve per cent. until the
time the contract was entered into, and at the rate of
ten per cent. from that time until the 20th of October
following. It was also expressly stipulated, that if the
rate of interest on the note was reduced, there should
be a corresponding reduction in the price of the land.

The purchaser having paid one hundred and nineteen
dollars in the month of April, and about seven hundred
and twenty-two dollars in June next after the date of
the contract; exhibited his bill in chancery, on the 11th
day of September next following, alleging that his vendors were insolvent; that they were attempting to sell
the land to other persons, and were committing waste,

by cutting and selling the timber. He obtained an injunction to prevent a sale, and the further commission of waste.

By an amended bill, filed after the time when the contract was to have been executed by both parties, he alleged a tender of good notes, to the full amount of the price stipulated, and an offer by him to comply with his part of the contract, on the day fixed for that purpose, and a refusal by the vendors to accept the notes, and comply with the contract on their part. He prayed for a specific execution of the contract.

The defendants opposed a specific execution of the contract on two grounds: First, that the complainant had failed to make the advance payment of two thousand dollars, whereby they had sustained great injury in two particulars. The mortgagees had, as they alleged, brought a suit, obtained a decree, and had the land sold to pay the lien which should have been discharged by the complainant. John M. Walker, one of the vendors, had made a contract for the purchase of another tract of land, on the expectation that he would be able to pay for it out of the purchase money, but in consequence of the complainant's failure to make the payment, he had been compelled to surrender the benefit of the contract.

The second ground relied upon was, that the contract was usurious, oppressive and unconsciencious; one that the Chancellor should not enforce.

The Court below refused to execute the contract specifically, and dismissed so much of the complainant's bill as sought its enforcement. The bill was retained for the purpose merely of compelling the defendants to refund to the complainant the purchase money which he had paid to them.

As it regards the first ground relied upon by the defendants in resistance of a specific execution, an examination of the attendant circumstances will make it perfectly manifest, that the failure to complete the advance payment was produced, not by the negligence of the purchaser, but by the refusal of the mortgagees to receive cash notes in discharge of their demands, and the

vendors showed, by their subsequent conduct, that they did not regard the contract as terminated by such failure on the part of the purchaser. And, further, that the vendors did not sustain any actual injury by the failure of the purchaser to complete the advance payment of two thousand dollars.

Shortly after the contract was entered into, Berry, the purchaser, offered to transfer good cash notes to the administrator of the mortgagee, to discharge the mortgage debt. The administrator declined receiving them, until he could ascertain from the debtors whether their notes would be promptly paid. Afterwards, the vendor's agent and Berry, went together to the administrator, to know from him if he would receive the notes. He then refused to receive them, and required the debt to be paid in money. Subsequently, the agent of the vendors received from Berry upwards of seven hundred dollars of the purchase money, notwithstanding he had not transferred notes to the amount of two thousand dollars, according to his contract, and with a knowledge that the liens could not then be removed, otherwise than by the payment of money, clearly showing that they regarded the contract as still subsisting, and not as terminated by the failure to pay the cash notes, which would not be received in discharge of the mortgage debt.

The whole amount of the advance payment was insufficient to pay off the liens existing on the land at the time of the sale. This payment, therefore, could not have been relied upon by John M. Walker to pay for the land he had purchased. Berry had a right to have it applied in discharge of the liens on the land purchased by him. Such was the express agreement of the parties; and the purchaser had an interest in having it thus appropriated.

*A purchaser of land has a right to extinguish liens upon the land purchased, by buying in the land when offered for sale under decree to satisfy such lien.* Before the sale was made, a suit had been brought to foreclose the mortgage, and a decree *nisi* had been rendered. The cost of that suit was not, therefore, occasioned by the conduct of Berry. In July, 1843, a decree for a sale of the land was entered, and a sale was made in the month of September following. At the

time of the sale under the decree, the debt amounted to upwards of fourteen hundred dollars. Berry purchased at the sale, and paid off the debt for one eighth of an acre of the land, of average value, in the the residue of the tract. He insists that he made the purchase at the instance of his vendors. Whether he did or not, is immaterial. He had a right to remove the lien, by paying the demand ; and it is evident that the purchase, which was only nominal, was really made for that purpose. The sums he had previously paid, together with the amount bid at the sale, exceeded the amount of the advance payment.

Berry would no doubt have preferred paying the amount decreed to the mortgagees, with good notes ; but as they would not be received in payment, he was compelled, in order to effect a removal of the incumbrance, to pay the amount in money. A strict and literal performance of the contract, would have been more to his advantage ; and less advantageous to his vendors. The payment, if made immediately after the purchase, would, according to the stipulations of the contract, have entitled the purchaser to ten per cent. thereon, from the time of the payment, until the time that possession was to be given ; when the unpaid debts were only bearing an interest of six per cent. There is, therefore, no plausible pretext for the assumption, that a loss was sustained by the vendors, in consequence of the failure of the purchaser to make the advance payment, unless it be, that the cost arising from the sale by the Commissioner, under the decree of the Court, produces such a result ; and to remove even this pretext, the purchaser should be required to pay it.

It is intended, in support of the second ground relied upon by the vendors, that the contract is usurious, and that a Court of Equity will afford no aid to the creditor to enforce a usurious contract. The doctrine adverted to, is misapplied in the attempt to make it bear upon the present case. Where, upon a loan of money, or the forbearance of a debt due, the contract stipulates for the payment of an interest exceeding six per cent per annum, the contract is usurious, and a Court

Contracts to pay usurious interest, since the act of 1819. are no farther void than as they stipulate for the payment of more than six per cent. A vendor agreeing to accept his own bond, in which there is usury included, in part pay for

Berry
vs
Walker.

land sold, does
not sanctify the
usurious con-
tract or create
any new obliga-
tion to allow and
pay it—nor is the
contract for the
land rendered
unobligatory by
the refusal of
vendor to allow
the usury. A
stipulation that
the price of the
land shall be re-
duced if the usu-
ry is not allowed
is not obligatory,
being intended
to coerce the
payment of usu-
ry, the price be-
ins full and fair
without it.

of equity will refuse to aid the creditor in the collection of the usury. But this contract was for the purchase of land. It was neither for a loan of money, nor for the forbearance of a debt due. It is true that by the agreement of the parties, a debt due by one of the vendors to the purchaser, which contained a considerable amount of usury, was to be received in payment of so much of the price of the land. That agreement does not legalize the usury. It was merely an additional promise to do that, which not being obligatory by the first agreement, is not made more so in consequence of a second promise to the same effect. Nor does the agreement to pay the debt including the usury, out of the price of the land, vitiate the contract of purchase; or make it usurious. The contract was not made as an evasion of the Statute against usury, to cover an usurious transaction, but was in reality for the sale and purchase of a tract of land, in the payment for which some usury which had accrued upon a previous agreement of the parties was to be applied. This part of the arrangement of the parties, was merely incidental to their main object and does not affect its legality in any degree.

The stipulated price was about the fair value of the land. The agreement of the parties that in the event the rate of interest was reduced, there should be a corresponding reduction of the price, not having been produced by reference to the actual value of the land, but obviously with a view to enforce the payment of the usury contrary to law, must be disregarded. There is no pretext for the assumption that the contract was hard and unconscientious, or that any advantage was taken of the condition of the vendors. The price agreed upon was the full value of the land at the time of the sale. If the vendors chose to make a reduction in the price of the land equal to an interest of ten per cent. per annum, upon that part of the purchase money, which being paid before the possession was delivered, was really a payment in advance, they had a right to do it, and such an agreement was not usurious or illegal. So far as the contract stipulated for the payment of usury on the existing debt, either that which had accrued theron, or

might accrue thereon subsequently, not being obligatory on the parties, it could not render the contract, which was in other respects fair and unobjectionable, liable to the imputation of being hard, oppressive and unconscientious.

The Statute of 1819 (2 *Digest* 856) upon the subject of usury, changed the law in regard to the effect produced upon the contract itself by a reservation of a higher rate of interest than six per cent. per annum. By the act of 1798, all such contracts were declared void. By the act of 1819, they are made valid as to the debt and legal interest, and are only void so far as relates to the usury; and the Statute expressly provides, that in no case either at Common Law or in Chancery, or in any other way, shall the lender be prevented from recovering the debt with lawful interest thereon. Since the passage of this Statute then, whenever the lender has a right to go into a Court of Chancery, he is, notwithstanding the contract may be infected with usury, entitled to the aid of the Court, to the extent of the actual debt and the legal interest thereon; so that an objection to a contract upon the ground that it is usurious, has not now the same effect in a Court of equity, that it had prior to the passage of this Statute, when in consequence of all such contracts being declared void by the Statute, Courts of equity repudiated the contract, and refused any assistance to the lender in his attempt to enforce it.

Although a mortgage existed upon the land, it was not held by the purchaser, nor had he any interest in it. He was the creditor it is true of one of his vendors, but to a small amount when compared with the total price of the land sold. His attitude gave him no power over his vendors, nor is there anything in the relation of the parties to each other, as debtor and creditor, which calls upon the Chancellor to view the contract with disfavor, or to refuse his aid in executing it specifically. The purchaser, has been guilty of no negligence in the performance of his part of the contract, and has evinced a solicitude to comply with it fully. The price agreed upon, was a fair one, at the time the contract was made,

A purchaser holding a note for money upon the vendor, in which there was usury, for a small part of the price of land purchased which vendor had agreed to take up in part of the price, though not binding as to the agreement to pay usury—yet it constituted no ground for a refusal of vendor to refuse a specific performance, and it was denied.

although the land afterwards appreciated in value very considerably ; and to the later circumstance, the opposition of the vendors to a specific execution of the contract is evidently attributable.

Good faith in the observance of contract, both on the part of the vendor and vendee, should be maintained and enforced in a Court of Chancery. This is necessary for the purpose, of promoting punctuality in dealing, and creating a just sense of the sanctity and obligation of contracts. The contract, therefore, in this case should have been specifically executed.

Wherefore the decree is reversed and cause remanded. that a decree may be rendered, and further proceedings had in conformity with this opinion.

*Apperson* for appellant; *Hazlerigg and Moore* for appellee.